UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-80045-CR-ALTMAN/Brannon

UNITED STATES OF AMERICA,

v.

NAOMI NATAL HAYNES,

    *Defendant.*
_____/

# ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion to Suppress Evidence of an Illegal Border Search (the "Motion") [ECF No. 73]. The Court held a hearing on the Motion [ECF No. 144]—at which the Government presented the testimony of five witnesses. The Court has carefully reviewed the Motion, the Government's Response (the "Response") [ECF No. 103], the record, and the governing law. For the following reasons, the Motion is **DENIED**.

## ANALYSIS

In her Motion, the Defendant—who was stopped, and whose car was searched, at the U.S.-Canada border—argues that the search of her cell phone violated her Fourth Amendment right to be free from unreasonable searches and seizures. *See generally* Mot. Specifically, the Defendant contends that the agents had neither probable cause[1] nor reasonable suspicion to search her cellphone. *See id.* at 6–9. But, in the Eleventh Circuit, border searches require *no suspicion* at all. *See United States v. Touset*, 890 F.3d 1227, 1233 (11th Cir. 2018) ("The Supreme Court has never

---

[1] The Government appears to concede that it did not have probable cause. *See* Resp. at 9 ("As such, the United States had the same authority to inspect Ms. Haynes' electronic devices as any other property on the border—without a warrant or probable cause.").

required reasonable suspicion for a search of property at the border, however non-routine and intrusive, and neither have we."). For this reason alone, the Defendant's Motion must be denied.

But, noting the current circuit-split on this issue,[2] the Defendant hopes to preserve her appellate rights by contending that, if *Touset* is ultimately overturned, her search would be illegal because the U.S. border agents lacked reasonable suspicion to search her cellphone. *See* Mot. at 7–9. Here, again, the Defendant is mistaken.

Reasonable suspicion requires that a police officer "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [an] intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Reasonable suspicion, in other words, demands a "particularized and objective basis for suspecting the particular person"—a basis, in short, that regards the "whole picture." *United States v. Cortez*, 449 U.S. 411, 695 (1981). Notably, in assessing whether the government agents had reasonable suspicion, the Court must "[look] at the totality of the circumstances from the perspective of an objectively reasonable police officer." *United States v. Smith*, 448 F. App'x 936, 938 (11th Cir. 2011) (citation omitted).

In *United States v. Cotterman*, the Ninth Circuit—sitting en banc—held that, based on the peculiar facts of that case, reasonable suspicion was required for a "forensic examination" of a laptop computer at the border. *See Cotterman*, 709 F.3d at 967–68. In that case, the Defendant, Howard Cotterman, was driving home from a vacation in Mexico when he was stopped at the border. *See id.* at 956. After conducting a "primary inspection," a border agent ran Cotterman's information and found that, years earlier, he had been convicted of: (i) two counts of use of a minor

---

[2] *Compare Touset*, 890 F.3d at 1232 (finding that "searches at the border are reasonable without suspicion") *with United States v. Cotterman*, 709 F.3d 952, 957 (9th Cir. 2013) ("Mindful of the heavy burden on law enforcement to protect our borders . . . we conclude that . . . reasonable suspicion was required for the forensic examination of Cotterman's laptop.").

2

in sexual conduct, (ii) two counts of lewd and lascivious conduct upon a child, and (iii) three counts of child molestation. *See id.* at 957. Based on this information—and a tip that Cotterman might have been involved in child-sex tourism, *see id.*—the agent referred Cotterman to "secondary inspection," *see id.* The ensuing search of Cotterman's car yielded two laptop computers and three digital cameras—each of which contained a number of password-protected and encrypted files. *See id.* at 958. The agents seized the devices and sent them to an ICE[3] Office 170 miles away for a forensic analysis. *See id.* In the meantime, Cotterman was allowed to go home. *See id.* The forensic examination of one of the laptop computers revealed the presence of 378 images of child pornography—the "vast majority" depicting the same seven-year-old girl. *See id.* at 959. After a federal grand jury indicted Cotterman, he moved to suppress the evidence the agents had found on his computer. *See id.*

Relying on a Supreme Court case that had required reasonable suspicion for a border search involving a 24-hour detention and an invasive body cavity search, *see United States v. Montoya de Hernandez*, 473 U.S. 531 (1985), the Ninth Circuit concluded that forensic examinations of laptop computers likewise demand reasonable suspicion, *see Cotterman*, 709 F.3d at 968. As the Ninth Circuit saw it, because computers "are simultaneously offices and personal diaries," *id.* at 964, which are "capable of storing warehouses full of information," *id.*, they carry with them "a significant expectation of privacy," *id.* at 966. In sum, the court held, if the government wants to conduct an "exhaustive forensic search of a copied laptop hard drive," it must first establish "reasonable suspicion." *Id.*

To be sure, the Ninth Circuit's rule does not apply here in Florida. But, even if it did, the Defendant's Motion would be denied. At the hearing on the Defendant's Motion, the Court heard

---

[3] Immigration and Customs Enforcement.

the testimony of four CBP[4] officers and one ATF[5] agent. That testimony—which was both credible and wholly uncontroverted—established that, before the searches at issue here, the officers were already in possession of the following critical pieces of information: (i) CBP's system had a "lookout" for Haynes, which noted that she had recently purchased multiple handguns in Florida and that she had then crossed the U.S.-Canada border in a rental car; (ii) Haynes claimed $4,300 on her customs declaration; and (iii) Haynes was in possession of a gun dealer's business card.

The testimony, in short, established that the agents searched the Defendant's car and phone—not because of some unjustified "hunch"—but because they were firmly in possession of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant[ed] [the] intrusion." *Terry*, 392 U.S. at 21. And, having observed the agents' testimony, the Court "credit[s] the agents' observations and experience in acting upon significant myriad factors that support reasonable suspicion" here. *Cotterman*, 709 F.3d at 970. Put simply, even if the Government had been required to demonstrate that it had reasonable suspicion to search the Defendant's car and phone, the evidence the Government submitted was more than sufficient to meet that burden.

Accordingly, the Defendant's Motion to Suppress [ECF No. 73] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 8th day of January 2020.

                                                 **ROY K. ALTMAN**
                                                 **UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

---

[4] U.S. Customs and Border Protection.
[5] Bureau of Alcohol, Tobacco, Firearms, and Explosives.